COURT OF APPEALS OF VIRGINIA


Present:   Judges Bumgardner, McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


RUSSELL EDWARD MILLNER

v.      Record No. 1494-03-3

DIANNA PERKINS MILLNER                      MEMORANDUM OPINION* BY
                                            JUDGE ELIZABETH A. McCLANAHAN
DIANNA PERKINS MILLNER                           JULY 13, 2004

v.      Record No. 1535-03-3

RUSSELL EDWARD MILLNER


                FROM THE CIRCUIT COURT OF BEDFORD COUNTY
                        James W. Updike, Jr., Judge

            Monica Taylor Monday (David G. Weaver; Gentry Locke
            Rakes & Moore, on briefs), for Russell Edward Millner.

            John K. Taggart, III (Patricia D. McGraw; Tremblay & Smith,
            LLP, on briefs), for Dianna Perkins Millner.


        Russell Edward Millner (husband) and Dianna Perkins Millner (wife) each appeal from a

chancellor's decisions on various issues arising out of their divorce proceedings. The parties

contend that the trial court erred in its judgment concerning the interpretation of an antenuptial

agreement, equitable distribution, spousal support, reservation of spousal support, and attorney's

fees. For the reasons that follow, we reverse certain of the trial court's rulings and remand the

impacted issues for further proceedings consistent with this opinion.

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. Background

Husband and wife married in May 1988. The day before their wedding, on May 27, 1988, they executed an antenuptial agreement. The agreement begins with the following recitals:

> WHEREAS, the parties intend to marry each other; and
> WHEREAS, the parties each own real and personal property of substantial value, which the parties wish to leave to their respective children from previous marriages, and
> WHEREAS, each of the parties desire to retain their respective separate property rights in the real and personal property presently owned by him or her.

The agreement also contains the following provisions. Under the title, "Separate Property," the agreement reads:

> Except as otherwise specified in this Agreement, the parties shall separately retain all rights in his or her own property, both real and personal, tangible and intangible, whether now owned or hereafter acquired, and each of the parties shall have full, absolute and unrestricted power and right to lease, manage, sell or dispose of his or her own property in any manner, and to receive all moneys, rents, issues and profits therefrom, free from any claim that may be made by the other party by reason of their marriage and without molestation or interruption from the other party.

Under the title "Jointly Held Property," the agreement reads:

> Nothing contained herein shall affect the right of the parties to acquire jointly held property. Such jointly held property will be held in the names of both parties; neither party shall have the power to sell, transfer, convey, encumber or otherwise dispose of such property without the consent of the other party.

After more than thirteen years of marriage, in August 2001, husband filed for divorce, asking the court to enforce the antenuptial agreement and to equitably divide the marital assets of the parties. Wife filed an answer and cross-bill in October 2001, requesting the court to dismiss husband's cause of action and to award her a divorce from husband. She also asked the court to equitably divide the parties' property.

In January 2002, wife filed a motion to determine the enforceability of the antenuptial agreement. After an *ore tenus* hearing, the court ruled that the agreement was fully enforceable, but left "for another day" what the agreement meant.

About a year later, wife filed a motion to compel, seeking the trial court's interpretation of the agreement. The court granted wife's motion to compel and held that "the Agreement does not waive any rights the parties might have to equitable distribution as set forth in Section 20-107.3."

In February 2003, the trial court heard evidence and argument on issues relating to the grounds of divorce, equitable distribution, spousal support and attorney's fees. In a letter opinion, dated March 20, 2003, the court classified, valued and allocated the various parcels of real estate, bank accounts, and personal property of the parties. Wife was awarded 45% of the marital estate. Husband was ordered to pay a monetary award to wife in the amount of $312,192.65, by transfer of property subject to the court's approval, or by payments of at least $65,000 per year. The court also denied wife spousal support and each party's request for attorney's fees. Subsequently, husband requested permission of the court to pay the monetary award in shares of stock.

Both parties filed motions to reconsider. The court denied the motions to reconsider and, on May 16, 2003, entered a final decree, incorporating its letter opinion. The parties cross-appealed.

## II. Husband's Appeal, Record No. 1494-03-3

Husband appeals the chancellor's decision that the antenuptial agreement did not waive any rights the parties had to equitable distribution of property. The trial court found that the "Separate Property" provision of the agreement only applied to assets acquired from the rents and proceeds of property owned by each party before the marriage. The court rejected husband's

assertion that the agreement waived all of the rights each party may have to the equitable distribution of the other party's separately titled property, obtained prior to or subsequent to the marriage.

Prior to the General Assembly's enactment of equitable distribution provisions in 1982, title generally controlled ownership of property upon dissolution of a marriage. See Sawyer v. Sawyer, 1 Va. App. 75, 78, 335 S.E.2d 277, 279 (1985) ("The legislature enacted Code § 20-107.3 to give the courts power to compensate a spouse for his or her contribution to the acquisition of property obtained during the marriage without regard to title when the marriage is dissolved."). Under current Virginia law, all property acquired during marriage is "presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(A)(2). That is because, "[a] partner in a marriage owes his labor during the marriage to the marital partnership[, and] the fruits of that labor, absent express agreement, are marital property." Stainback v. Stainback, 11 Va. App. 13, 24, 396 S.E.2d 686, 693 (1990).

"The party claiming that property should be classified as separate has the burden to produce satisfactory evidence to rebut this presumption." Stroop v. Stroop, 10 Va. App. 611, 615, 394 S.E.2d 861, 863 (1990). The presumption can be rebutted or doesn't apply if the parties enter into an express agreement that limits their rights and obligations with respect to each other's property. See Code § 20-147 *et seq.* One of the primary purposes of an antenuptial agreement is to establish a distinction in the ownership of the property of married couples so that each spouse may hold property free from any rights of the other spouse during the marriage or upon dissolution of the marriage. Such agreements are commonly understood to convey the notion that, upon marriage, the wife will have her property, the husband will have his property, and each may dispose of that property as if the parties had never married.

"Antenuptial agreements, like marital property settlements, are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002); Code § 20-107.3(I). We are not bound by the trial court's conclusions as to the construction of disputed provisions in an agreement. Utsch v. Utsch, 266 Va. 124, 129, 581 S.E.2d 507, 509 (2003); Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E. 2d 396, 398 (1984). Therefore, "[w]e review the terms of an agreement *de novo*." Shenk v. Shenk, 39 Va. App. 161, 173, 571 S.E.2d 896, 903 (2002) (citing Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986)).

> "The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Wilson, 227 Va. at 187, 313 S.E.2d at 398 (quoting Meade v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).

"When a written marital agreement is presented, a court applies the same rules of formation, validity and interpretation used in contract law, except where specified by the Code." Shenk, 39 Va. App. at 170, 571 S.E.2d at 901 (internal citations omitted). "In reviewing the agreement, we must gather the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." Layne v. Henderson, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986); see also Monterey Corp. v. Hart, 216 Va. 843, 850, 224 S.E.2d 142, 147 (1976); King v. King, 40 Va. App. 200, 206, 578 S.E.2d 806, 809-10 (2003). The construing court "must give effect to all of the language of [the instrument] if its parts can be read together without conflict." Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983). Further, the instrument must be read as a single document,

with meaning given to every clause. See id.; Winn v. Aleda Constr. Co., 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984) ("No word or clause will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words aimlessly."); Wilson, 227 Va. at 187, 313 S.E.2d at 398.

The trial court found that the agreement did not "waive any rights the parties might have to equitable distribution as set forth in Section 20-107.3." We disagree. That interpretation disregards the parties' clear purpose in signing the agreement, which, as stated in the recitals to the agreement, was to "retain their respective separate property rights in the real and personal property presently owned by him or her."

Wife asserts that the "Separate Property" provision does not expand the scope of the agreement beyond the recital language to include any property separately owned or acquired by the parties after they were married. She also argues that the "Separate Property" provision conflicts with the recital language and that in such cases, the recital language should prevail. The "Separate Property" provision of the agreement, which provides that the parties retain the rights in his or her own property, "whether now owned or hereafter acquired," is not inconsistent with the recital language of the agreement. A court must give effect to all of the language of a contract if it can be read together without conflict. Berry, 225 Va. at 208, 300 S.E.2d at 796. The "Separate Property" provision language can be read in concert with the recital language and takes nothing away from the recital language. Both the recital language and the "Separate Property" provision language protect the rights each party has in his or her own property.

But, even if it were in conflict, the obligatory language of the "Separate Property" provision would prevail. United Virginia Bank v. Best, 223 Va. 112, 115, 286 S.E.2d 221, 223 (1982). The "Separate Property" clause states, "the parties shall separately retain all rights in his or her own property, both real and personal, tangible and intangible, whether now owned or

hereafter acquired." If the agreement meant that the parties only retained rights to separate property owned before the marriage, no effect would be given to this language, which plainly states that the parties would retain *all* rights to their own property, *whether acquired before the agreement was signed, or after it was signed*. No clause in an agreement is to be treated as meaningless if reasonable meaning can be given to it. Winn, 227 Va. at 307, 315 S.E.2d at 195; Wilson, 227 Va. at 187, 313 S.E.2d at 398; Berry, 225 Va. at 208, 300 S.E.2d at 796.

The "Separate Property" provision continues,

> and each of the parties *shall have full, absolute and unrestricted power and right* to lease, manage, sell, or dispose of his or her own property in any manner, and to receive all moneys, rents, issues and profits therefrom, free from any claim that may be made by the other party *by reason of their marriage* and without molestation or interruption from the other party.

(Emphases added). This clause enumerates, non-exclusively, the rights the parties have in relation to their separately titled property. The parties have the right to lease, manage, sell or dispose of his or her separate property free from any claim of the other. And, each party has the right to any proceeds generated by his or her separate property.

The agreement obviously intended that ownership of the property would be governed by title. Hence, the agreement included a provision for "Jointly Held Property." That provision reads, in pertinent part, "jointly held property will be held in the names of both parties; neither party shall have the power to sell, transfer, convey, encumber or otherwise dispose of such property without the consent of the other party." Jointly titled property therefore, is to be treated differently from separately titled property. Jointly titled property is subject to equitable distribution because the provision does not exempt the parties from any claim made against that property by reason of the marriage.

Upon a review of the agreement, read in its entirety and assigning plain meaning to all of its words, we find that the parties entered into the agreement to protect their separately titled

- 7 -

property, whether acquired before or after the marriage, from any claim or interest that might be asserted by the other party, including equitable distribution. Therefore, we reverse the trial court, and remand for proceedings consistent with this opinion.

## II. Wife's Appeal, Record No. 1535-03-3

On cross-appeal, wife asserts that the trial court erred: (1) in its classification of six items of property; (2) in valuing the marital estate; (3) by failing to award wife permanent spousal support; and, (4) by permitting husband to pay the monetary award in stock shares. In addition, wife contends that the trial court erred in failing to award her reasonable attorney's fees. She also requests this Court to award her costs and attorney's fees incident to this appeal.

### A. Equitable Distribution and Valuation of the Marital Estate

Wife asserts that the trial court erred in classifying, (a) the Lockwood Drive property; (b) the Coolbrook Road property; (c) the 12,467 shares of Bedford Federal Savings Bank stock; (d) a portion of husband's Bedford Federal Savings Bank money market account; (e) several pieces of farm equipment; and, (f) certain jewelry. We "review the evidence in the light most favorable to [husband], the party prevailing below and grant all reasonable inferences fairly deducible therefrom," Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999), and we do "not substitute [our] judgment for the trial court's determination unless we find that the testimony relied upon by the trial court is inherently incredible." Parish v. Spaulding, 26 Va. App. 566, 575, 496 S.E.2d 91, 95 (1998). In this case, we affirm the trial court's factual findings as to the classification of the assets.

In classifying the parties' assets under the equitable distribution statute, if the court determines that an asset is separate, that asset is not equitably distributed between the parties. If the court classifies the asset as marital or partly marital, the court then determines "the ownership and value" of the property. Code § 20-107.3(A). Although we have remanded this case to the

trial court to divide the property according to the terms of the antenuptial agreement, we find that the trial court was correct to classify items (a) – (d) as separate property: (1) under the agreement because they were titled in his name alone, and (2) under the equitable distribution statute because the evidence supported such a finding. "An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason." Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992) (citation omitted). This rule applies in civil cases. See id.

With respect to (e), the farm equipment, the trial court classified it as husband's separate property. Wife contended that the farm equipment was purchased during the marriage, and was therefore presumptively marital. Husband testified that although it was acquired during the marriage, it was purchased with separate funds from his trustee account. Wife contends that husband's evidence was unsubstantiated and inadequate for the trial court to classify the farm equipment as husband's separate property. The trial court accepted husband's testimony that the funds used to purchase the farm equipment came from his separate property and treated the testimony as sufficient evidence to rebut the marital presumption.

With respect to (f), the jewelry, husband asserted at trial that wife owned $20,000 worth of jewelry at the time of divorce. He testified that he had purchased between $12,000 and $15,000 of that jewelry during the marriage. Based on husband's testimony, the trial court determined, "The jewelry that husband gave wife during the marriage is classified as marital property."[1] The court then assigned a value of $12,000 to the jewelry. Wife asserts that

---

[1] The evidence established that husband bought wife jewelry during the marriage. In its letter opinion, the court stated that husband "gave" wife the jewelry. Interspousal gifts are classified as marital property unless the party seeking to classify the property as separate rebuts the marital presumption. Code § 20-107.3(A)(1)(ii) and (A)(2)(iii). Wife made no argument rebutting the marital presumption with regard to the jewelry.

husband's testimony alone was insufficient for the trial court to find that there was *any* jewelry in the marital estate.

There is no evidence in the record to show that husband's testimony with regard to either the farm equipment or the jewelry is inherently incredible. Because the trial court's decision was supported by credible evidence and was not plainly wrong, we affirm the trial court's classification of the farm equipment and the jewelry.

In light of her assignment of error on the classification of the above assets, wife complains that the trial court's determination of the monetary award was in error. While we affirm the trial court on the classification of the above items, because the court erred in its interpretation of the antenuptial agreement for the reasons stated above, we reverse the monetary award and remand for further proceedings consistent with this opinion.

### B. Spousal Support and Reservation of Spousal Support

In determining the amount of a spousal support award, the trial court must consider all of the factors set forth in Code § 20-107.1(E). Stubblebine v. Stubblebine, 22 Va. App. 703, 707, 473 S.E.2d 72, 74 (1996) (*en banc*) (citation omitted). Those factors include the "provisions made with regard to the marital property under Code § 20-107.3." Code § 20-107.1(E)(8). Because we remand on the equitable distribution issue, we also remand the spousal support issue to the trial court for reconsideration, as necessary. Rowe v. Rowe, 24 Va. App. 123, 139, 480 S.E.2d 760, 767 (1997); Stumbo v. Stumbo, 20 Va. App. 685, 694, 460 S.E.2d 591, 595 (1995); see also Brinkley v. Brinkley, 5 Va. App. 132, 142, 361 S.E.2d 139, 143-44 (1987).

With regard to reservation of spousal support, Code § 20-107.1(D) provides that the trial court may "[i] n addition to or in lieu of an award" of spousal support, "reserve the right of a party to receive such support in the future." Wife contends that, as a matter of law, the trial court erred by not reserving to her a right to seek future spousal support. She concedes that she did not

- 10 -

request a reservation of future support. However, she argues, relying on Vissicchio v. Vissicchio, 27 Va. App. 240, 254-55, 498 S.E.2d 425, 432 (1998), that because she made a specific request for permanent spousal support, she implicitly made a request for a reservation of spousal support.

This Court has consistently held that "where there is no bar to the right of spousal support 'it is reversible error for the trial court, upon request of either party, to fail to make a reservation in the decree of the right to receive spousal support in the event of a change of circumstances,' even though, at the time of the decree, neither party needed support." Blank v. Blank, 10 Va. App. 1, 4, 389 S.E.2d 723, 724 (1990) (quoting Bacon v. Bacon, 3 Va. App. 484, 491, 351 S.E.2d 37, 41 (1986)). "The silence of a final decree as to spousal support has the effect of foreclosing a spouse from petitioning the [trial] court under Code § 20-109 for a future award in the light of changed circumstances." D'Auria v. D'Auria, 1 Va. App. 455, 462, 340 S.E.2d 164, 168 (1986). That proposition, however, presupposes that the party seeking such relief has expressly requested it. See id. "[W]here the record shows no request for a reservation, the court is under no obligation to insert such language *sua sponte*." Id. (citing Thomasson v. Thomasson, 225 Va. 394, 397 n.1, 302 S.E.2d 63, 65 n.1 (1983)).

While wife requested an award of permanent spousal support in her pleadings, she did not request a reservation of future support in her answer, in her cross-bill of complaint, at hearing, or in her motion to reconsider. Moreover, at trial, wife argued her need for current support, but never argued a need to reserve her right to future support. The trial court made no ruling reserving support.

"Fundamental rules of pleading provide that no court can base its judgment or decree upon a right which has not been pleaded and claimed." Boyd v. Boyd, 2 Va. App. 16, 18, 340 S.E.2d 578, 580 (1986) (citation omitted). While we noted in Reid v. Reid, 24 Va. App. 146,

- 11 -

149, 480 S.E.2d 771, 772 (1997), that a trial court adjudicating a divorce has jurisdiction "to 'provide in its decree for the . . . support and maintenance [of] the spouse,' upon the 'requests' of 'either party to the proceedings,'" we held that in a divorce proceeding the relief being sought must be "specifically pled." Id. at 150, 480 S.E.2d at 773 (citation omitted).  Similarly, we have held that Code § 20-107.1 "grants to the divorce court the power to award maintenance and support, but [that] the exercise of such power remains dependent upon the pleadings having raised the issue."  Boyd, 2 Va. App. at 19, 340 S.E.2d at 580; see also Fleming v. Fleming, 32 Va. App. 822, 826, 531 S.E.2d 38, 40 (2000) (reversing an award of "spousal support [where] the pleadings contained no request for it").

Absent wife's specific request for a reservation of right to seek future spousal support, that question was never specifically before the trial court for determination.  Accordingly, we find that the trial court did not abuse its discretion in not awarding wife a reservation of the right to future spousal support.

### C.  Payment of Monetary Award in Stock Shares

Wife argues that the method by which the trial court allowed husband to pay the monetary award is unreasonable, in light of the parties' respective financial conditions and the possible negative tax consequences to her.  She states that husband has requested permission from the trial court to pay the monetary award with stock shares.

For an issue to be justiciable, it must involve a specific controversy based on present facts that are ripe for adjudication, not on future or speculative claims.  Treacy v. Smithfield Food, 256 Va. 97, 103-04, 500 S.E.2d 503, 506 (1998).  Courts do not have "the authority to render advisory opinions, decide moot questions, or answer inquiries that are merely speculative." Id. (citations omitted.)  Because the trial court has not yet ruled on husband's request to pay the monetary award with a transfer of stock, this issue is not ripe for appeal.

D.  Attorney's Fees

"An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion."  Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987) (citing Ingram v. Ingram, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976)).  As with the issue of spousal support, a determination of attorney's fees must be remanded to the trial court when the disposition of equitable distribution is remanded for reconsideration.  Stumbo, 20 Va. App. at 694, 460 S.E.2d at 595-96; Lightburn v. Lightburn, 22 Va. App. 612, 621, 472 S.E.2d 281, 285 (1996) ("In view of the disposition of the equitable distribution issue . . . we remand to the trial judge for reconsideration of the amount of the fee award.").  Therefore, we remand on the issue of attorney's fees expended for the proceedings below.

Wife requests that this Court award her costs and attorney's fees incurred on appeal.  See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).  Upon a review of the record, we find the litigation addressed appropriate and substantial issues and that husband did not generate unnecessary delay or expense in pursuit of his interests.  Therefore, the request is denied.

III.  Conclusion

Upon review of the antenuptial agreement and the applicable law, we reverse the trial court's equitable distribution award and remand for further proceedings consistent with this opinion.  We affirm the trial court with regard to its classification of items (a) – (e) and the classification and valuation of item (f).  We reverse and remand on the monetary award, as it is part of the equitable distribution award.  We find that wife's question with regard to payment of the monetary award in stock shares is not ripe for adjudication.  We remand for reconsideration

of spousal support and attorney's fees incident to the proceedings below.  And, we deny wife's

request for costs and attorney's fees incurred on appeal.

<u>Affirmed in part,</u>
<u>reversed in part</u>
<u>and remanded.</u>